We are then ready to turn to our first case for this morning, which is Whitaker v. Kenosha Unified School District No. 1 Board of Education, and we'll begin with Mr. Stapler. Good morning, Chief Judge, Judges, I have to remember to look to the camera as well. Good morning, Counsel. Good morning. May it please the Court, my name is Ron Stadler, and I represent the Kenosha Unified School District. The injunction that was issued in this matter was improvidently granted, and the motion to dismiss in this matter that was denied was erroneously denied. Plaintiff's complaint in this case simply does not set forth a valid cause of action. Title IX... is no such thing as a transgender person. In other words, does the district disagree that any such person exists? No. Transgender people certainly exist, and nobody has ever claimed from our side that transgender students don't exist. What our position has been is that Title IX is not violated by requiring students to use bathrooms, locker rooms, shower facilities, or housing accommodations that correspond to the sex on their birth certificate. And likewise... Could I ask you a question about any further application of that? I've wondered if the district would require Ashton Whitaker to compete on the girls' soccer teams and other athletic teams, or whether the district would say that the accommodations to his gender would prevent that. The district actually doesn't control that decision. That's controlled by the Wisconsin Interscholastic Athletic Association, which has separate rules in regard to the participation of transgender boys and girls in sports. All right. So basically, there's going to be an inconsistency. And can I ask you for a point of clarification about the district's policy? At one point, it appeared to me in the record that the district felt that it just didn't have enough medical proof of Ashton Whitaker's gender, and it wasn't satisfied with the statements from the pediatricians and the other professionals who submitted statements. And another point in the record, it appeared that it was just a birth certificate, do or die kind of policy. So which is it? It's birth certificate. And the district's policy has been that a student uses the bathroom that corresponds to the sex that's listed on their birth certificate. So suppose somebody's birth certificate said female, but genetic testing revealed that this was an XY person, which is the case for people with complete androgen insensitivity syndrome. Which bathroom? You follow the bathroom of the sex that's listed on your birth certificate. So even if it's an XY person, they have to go to the girls' room? There is something you can do about that. A person under Wisconsin law, and I think most states have a similar provision to this, and Wisconsin, it's 69.15 of the Wisconsin statutes, has a provision that says your birth certificate can be changed. If there is information that is listed on your birth certificate that was not correct at the time it was listed, it can be changed. You get a court order and you do that. You can also accomplish that after a sex change surgery. You can go back, get a court order, have your birth certificate changed. So what about an individual who has not had sex reassignment surgery, but who's undergone hormone therapy for that purpose? They are not able to have their birth certificate changed because their sex has not changed. What about a person who doesn't have a birth certificate or a birth certificate is missing? There's a provision also in Chapter 69 that allows you to get a birth certificate if one has never been issued to you. What about a person who's lost his or her external genitalia in an accident? If they have lost their external genitalia in an accident, they still have a birth certificate that says this is the genitalia that you were born with. Nothing has changed. So let me ask you a different question. This is a preliminary injunction. So one of the important points deals with the relative balance of harms. I have scoured the record in this case and I cannot see any evidence of harms. I can see speculation, I can see attorney argument, but I don't see any evidence on the school district side of harm that would occur by allowing this transgender boy to be a boy for purposes of bathroom usage. There's a lot of evidence that this is deeply harmful to Ashton Whitaker himself. There's been psychological harm, there's been suicidal ideation, there's the scholastic harm of wasting time running to and from this one bathroom that he can use instead of sitting in class. So tell me something about hard evidence of harm from the school district side. The invasion of the privacy of every other student in the school district. Why is that? But you have no complaints of students, do you? Certainly we have. Where is it in the record? I don't see anywhere. I see you assume this, but it's not clear to me that there wouldn't be a person or two who would be objecting to have a male by all external indicia in the girls' room, such as Ashton Whitaker. Maybe you think people are going to be complaining the other direction, but I don't see who's Ashton's complaint. No, who's complaining that Ashton, during the seven months, for example, that he used the boys' room, who complained? Where's the evidence in the record? Did you get affidavits from people? It's right in plaintiff's complaint. Did you get evidence in the record, evidence? We do not have evidence in the record of all the people who complained. Do you have evidence in the record of any people who complained? Yes, in plaintiff's complaint. Who are they? This implicates privacy concerns. Is there any reason, for instance, to think that transgender children are more likely to engage in intrusive behavior in the bathroom than other children? I believe that transgender children, like any children, could engage in intrusive behavior. Anybody could. Then what are you going to do with all those other children who are acting in an intrusive manner? They're subject to discipline. So I want to get back to specific complaints in the record. That just doesn't, you know, make very much... I mean, if the concern is based on the fact that these children look different, shouldn't there then be different bathrooms for pre-pubescent children and post-pubescent kids? I mean, the pre-pubescent kids are likely to be curious about the bodies of the post-pubescent kids. We have, as a society, always, as a matter of privacy, segregated our bathrooms. But you see, you're assuming the answer to the question. The question is not whether there can be boys' rooms and girls' rooms or men's rooms and women's rooms. The question is, who is a boy and who is a girl? And your view, as you've now clarified it, is that whatever they wrote down in the birth certificate, unless or until it's amended, answers that question. But it actually, of course, doesn't for a certain number of people. There are people, either for biological reasons, chromosomal reasons, psychological reasons, who are assigned to a particular gender, where some or all of their physical characteristics may not point in that direction, at least according to assumptions. So I guess I want to get away from this, there can't be boys' and girls' rooms anymore, and understand that this is about who gets assigned to which. In our legal system, we assign sex with your birth certificate. You're either listed as being... Where does it say that in Title IX? Title IX says, one shall not be discriminated against because of sex. Right. This court said, and I know this is going to take your ire, this court said in Ulane, sex is because a man is a man and a woman is a woman. Right, which sounds to me rather tautological, actually. If you say, you're a woman because you're a woman, how have you advanced understanding of what it is to be a woman? And if you say, you're a man because you're a man, I mean, that's a classic tautology, isn't it? But the statute... And I'm not saying whether the bottom line in Ulane was right or whether the bottom line in Ulane was wrong. I don't want to go there, but I'm just saying that statement from Ulane is singularly unhelpful. This court and the United States Supreme Court has never deviated from the fact that sex means man because you're a man, woman because you're a woman. So you're not going to budge off of that. So a man who was in combat in Afghanistan, who had the tragic loss of his external genitalia, is he a man? He is a man. Because his birth certificate lists him as a man. Is that it? Correct. That's the problem with... If a young Whitaker had had his birth certificate changed, we wouldn't be here today. Correct. If a person has sex change... Is that the only circumstance under which Wisconsin will change a birth certificate? Or could he have applied, obviously, with the assistance of his parents since he's a minor? Could he have applied to have the birth certificate changed earlier? And if he had done so, would the school be fine with him using the boys' room, even without the surgery? You can have your birth certificate changed as a matter of right during the first 365 days of your life. After that, to have your sex change on your birth certificate, you need a court order that you had sex change surgery and your sex has been changed. So only surgery in Wisconsin will suffice after that. Correct. Obviously, for the transgender population, the first 365 days isn't going to help. Correct. So I want to get back to you, Lane, though, because I think that language is not controlling. And also, that was based on a narrow construction of Title VII, and I really don't think it survives Price Waterhouse based on the situation here. Scientific understanding has changed since you, Lane, and so I don't think you, Lane, gives you the comfort that you think it does. And I expect that from the court, and I want the opportunity to address that, because I think when one takes a good, hard look at you, Lane, you have to say, yes, times have changed, science has changed, society has changed, but let's talk about the things that have never changed. Whether we talk about Title VII or whether we talk about Title IX, we have always talked about the fact that the statute prohibits discrimination because of sex. Could I just ask you whether you think sex and gender are different or synonyms in light of the way the Supreme Court has discussed these terms? I think they are very different things. I think prior to transgender becoming something more prevalent in our society, courts had a habit of using sex and gender kind of interchangeably in some of our earlier decisions. Well, such as Price Waterhouse, actually, both the plurality opinions and the other opinions. Correct, all of these decisions have done that, and we need to get away from that, because they are different things. Well, how are we free to get away from how the Supreme Court used these terms? Because when we look at it, what the courts have consistently said is we're not going to look at the definition of because of sex in each of these cases and figure out what's because of sex. Like in Hively, we're not looking at is sex equal to sexual orientation? What they have said is the prohibition is against discrimination based on sex. Is this conduct, or some would say misconduct, actionable because it's discrimination because of sex? So why can't... I mean, I realize this is highly simplistic, but why can't you say the only reason you're not letting Ashton Whitaker use the boys' room is because you've looked at his birth certificate and it says female, and so on account of the sex in the birth certificate, he is being deprived of the use of a facility? Because we treat men and women exactly the same in that regard, whether you are male or female, you use the bathroom that corresponds to the sex that's on your birth certificate. It's kind of a separate-but-equal argument. It's not necessarily separate-but-equal, but it has nothing to do with sex. It has everything to do with sex. That's the only reason you're not letting him in the bathroom. It's not discriminatory on the basis of sex. The distinction that's being made for Ash, they would say, is on the basis of transgender. But we apply that rule equally to men and women. So why is it helpful to have... Let's take it the other way. Suppose there's a transgender girl who begins birth certificate with a male designation, and that girl doesn't want to be in the boys' room because she feels that she's going to be harassed in the boys' room. She's really at significant risk. You're still going to throw her into the boys' room. Of course you are, because her original birth certificate, in my hypothetical, says male. You're going to put her in there even though she's a transgender girl and has had... Let's assume she has breasts by now. She's had estrogen therapy. She's had all of this. Your school district is so determined to follow this policy that you're going to force this girl, externally female-looking girl, until you get down below the waist. You want her to have to be in the boys' room. That seems to me is the real risk. The other option is to use the unilateral sex bathrooms. If you had unilateral bathrooms throughout the school that everybody could use, just like we do on airplanes or any number of situations I can think of, I think our facts would be different. Unfortunately, your school doesn't, but I don't exclude the possibility of that. Our school does. No, you don't. It's way over in this record, which is what we're bound to. First of all, he's the only one who can use it because he has a key, so it's stigmatizing. Secondly, it's way the heck away from the classrooms, so he has to miss class time to go there. That's not what I'm talking about. I'm just saying if it was like airplanes, everybody lives with it. Right, but we don't have that. And remember, this is not just a bathroom issue. It's locker rooms. No, it's not. He's actually said, footnotes, he's not making any challenge to the locker rooms. But if this court declares that he has the right to use the bathroom, who's ever going to declare that he can't use the locker room? Well, that's a different question. I want to get back to, though, the number of people who have complained, the students who actually complained about his use of the bathroom. Because you've never answered that. And I've tried to, but I'm sorry, I've been interrupted on it. No, specifically, how many students? In Plaintiff's amended complaint, he specifically identifies that a parent came forward at a school board meeting and complained about transgender students using the wrong bathrooms that don't correspond to their birth certificate sex. To one parent. We have that. So that is a very, very slim, slim record on that. It is very slim. And so, I mean, that's meaningless. And when you look at some of the amicus briefs filed, especially when you look at the 21 school districts who are, I think it's something like 1.6 million kids have the kind of policy that the appellant here desires, it hasn't been an issue. And you haven't made anything in the record of students that actually complained. So for those seven months there were no complaints. But if it's not against the law, what do the complaints matter? People complain about all sorts of things that are not against the law. But if there's no violation of law, we're not here and we don't have anyone complaining. But the whole point was we have to balance the harm. And so that's why it matters. And let me finish my thought. That's why it matters who's actually complaining and if there have been complaints. I want to ask you another question, too. In terms of the animus here, why doesn't this policy demonstrate the same kind of animus that kept bathroom policies in place during the Jim Crow era? Because there's no animus directed at anyone. The policy is That's what they would have said in the Jim Crow era. They would have said, if you've seen the movie Hidden Figures, colored women go to this bathroom and white women go to that bathroom and everybody goes to their own bathroom. That's exactly what you've just said. And we have never said that. We have never said transgender students must go to this bathroom. What we have said is if your birth certificate says male, you go to the male bathroom. If the birth certificate says female, you go to the female bathroom. It matters not any other criteria. I'm going to give you another minute or two for rebuttal, so don't worry. If he obtains a birth certificate designating his sex as male or a legal ruling that he is male but everything else stayed the same, in other words, he remained physically the same as he is now, what would the school's policy be? Judge, I would respectfully say that's a hypothetical that can't occur because you can't get the change in the birth certificate unless you've had sex change surgery. So you can't get both the, my genitalia has stayed the same and yet my birth certificate has been changed. Can I ask just one follow-up question? In terms of the court procedure to get the change, how long would such a procedure take? I can't answer that, Judge. So you don't have any sense of how long it would take in the Wisconsin court system? Because that's a factor as well. In other words, is such a motion automatically granted, showing that they had the surgery? Do they have to wait in the normal course of, you know how long it takes for things to Our normal practice in Wisconsin state courts is if you're filing a petition of that nature, you file the petition, you get a date on the court's first calendar opening, which our courts is usually a month or two down the road, you go in for a hearing and it's ruled upon. So there's no six month waiting period or it takes you a year to get into court. Thank you. I will give you a little time. Mr. Wardensky. Good morning, Your Honors. May it please the court, I'm Joseph Wardensky for Plaintiff Appellee Ashton Whitaker. Your Honors, How should we treat the government's withdrawal of the Dear Colleague letter and what effect does the Supreme Court's decision to vacate the Fourth Circuit's opinion in Grimm have on your case? Do you think we should remand to the district court to determine the effect of those events on the court's decision to enter the injunction? Judge Roebner, I would take your second question first. Remand to the district court is unnecessary because the district court, although it recognized that deference to the guidance letters and interpretations of the federal government was appropriate, did not expressly rely on that to issue the injunction. And it's also worth emphasizing that the district court found a likelihood of success on the Equal Protection Clause claim, which is not an issue in the Grimm case, and that this court can affirm the injunction on that ground alone. With respect to your first question, the effect of the Trump administration's rescission of the guidance document with its February 22nd Dear Colleague letter, it's worth emphasizing that that letter takes no position as to the application of Title IX to the factual circumstances presented in this case. It rescinded a letter apparently in response to litigation that declined to take any position at all pending further review of the legal issues. To the extent that it is not taking a position, there is nothing new to defer to, but it does leave it up to this court as we have briefed, to interpret to consider the preliminary injunction in light of, as a matter of statutory and regulatory interpretation in the first instance, without reference to what the government's position may or may not be. So let me ask you a question, since you've mentioned it, about the equal protection theory, because your opponents argue, and I think with a great deal of force, that the district court should not have punted the issue of the standard of review here and that they argue further that if the standard of review is rational basis review, that's a standard that basically doesn't even require evidence. They can stand up and say this isn't the way it's ever been done and birth certificate is an objective fact and we think that's going to be the best way to run our school's period end of discussion. So I'm not sure that we can avoid the standard of review question, so I'd like you to tell me what you think it is and secondly, why they haven't, at least in their arguments, presented enough to satisfy it. It is our position that heightened scrutiny is appropriate here for two separate reasons. First, because Judge Wood, as you mentioned earlier, this case is all about sex. You can't discuss what the school district is doing here without reference to Ash's sex, the sex segregation in restrooms and considering gender based trace of students and assigning them to the segregated restrooms that do exist. So because there's inherently a gender based classification here, heightened scrutiny is appropriate. The district when it first announced its policy, which to this day is an unwritten policy, to Ash and his mother last spring asked for medical documentation and when that... Right, that's why I asked the first question I did. What is this policy actually? We don't actually know what the policy is and it's actually changed over the course of the litigation. It started with we haven't had a transgender student before so we don't think we need to. Then it went to provide some documentation when that was provided in the form of two letters from his pediatrician that was disregarded. Only after the litigation started did we start seeing a policy that resembles what the school district's attorney presented today which is the gender marker on one's birth certificate. So it's unclear what the policy is but the common strand through all of them is that however you formulate it, it's designed in a way to prevent this student, Ash Whitaker from using boys restrooms because it's impossible for him to meet any of the standards that the school district has created. Let me ask you this hypothetical because it's a very active area of litigation around the country. Suppose the school I don't know what the layout of this school is but very often the restrooms will be on the same corridor. Suppose each corridor with a restroom had door number one, girls door number two, boys door number three, anyone who wants to use it. You've seen them at O'Hare you've seen them, actually plenty of them and they're equally convenient you just go into, any student goes into door number three who happens to, they're actually often very long lines in the girls room and they're not in the boys room so they might go in there more often but anybody can go in. Would there be anything wrong with a school in a situation like that saying who goes into the girls room depends on what's in the birth certificate. There's always an option for people who are of gender three, whatever that may be. What would you think of that? I think it's still problematic and the school district has suggested that transgender is somehow a third sex but in fact what we're asking is much more limited than that it's only to recognize that to be a boy one can also be transgender to not disrupt the accepted definition of sex as either male or female but really to understand that in light of scientific research and the medical understanding of gender identity and what it means to be transgender that you can be a boy and also be transgender. I take it the DSM 5 recognizes this, that's correct? That's correct as do the WPATH standards of care which this court has recognized as authoritative in other cases. So council relies a lot on the birth certificate can you comment on that argument? Yes. That's determinative and if that had been changed then everything would be fine. Right. There's a couple points on that that I would like to mention. First, as reflected in the record, the school district doesn't require any student to present a birth certificate at registration. They can also present a passport. Ash Whitaker, under the current State Department standards, could obtain a birth certificate based on an affirmation from a medical provider that he's undergone gender transition related treatment. It doesn't have to be surgery. If he was a student, same student, but born in Minnesota he could obtain an amended birth certificate now and move into Kenosha and be treated as the boy that he is. So it's an arbitrary policy that as applied here is excluding this student from being treated as like every other boy. In a way that stigmatizes him and the problem with the third option there's several problems with one gender neutral option. If a transgender student is required to use that restroom while everyone else has a choice and the first problem with... Well the school district says that this harm he was self inflicted because he just didn't want to use it because it was inconvenient and he feared harassment. Was there any evidence he was bullied or subjected to violence because he used that single user restroom? He chose not to use the single user restroom because... Period. He never used it, right? I think that's correct and the reason why is that he had experienced some bullying in the past. He was aware of other students discussing him. He was legitimately afraid based on his own experiences and the experiences of other transgender students that he would be subjected to invasive questions about why he was using those restrooms because while he certainly is known to be transgender to many of his classmates, that's not across the board in a school of 1,700 students. Most kids know him to be a boy but even if they know he's transgender he was being subjected to much more invasive questions about where he was in his gender transition, why the school was requiring him to use separate facilities and so he felt humiliated and stressed and experienced the heightened symptoms of gender dysphoria, profound depression, suicidal ideation, thoughts of dropping out of school, all of which were serious and documented in the record here just based on the very idea that his school district somehow thought that he was an other and not a boy and worthy of being treated differently than every other student in this very large high school. So can I pursue a little further with you what I was asking? Well, you Chief, you argue that his claim is that the school district may not treat any boy the way it treated him either because the boy is transgender or perceived to be effeminate or for any gender related reason. In order to make this argument then, does Ash have to prove that as a finding of fact he is male and how would he prove this? We think that Ash, based on the record already available, has established that he's male through the medical records from his pediatrician, from his own statements about the gender identity with which he has lived full time and permanently for the last three years. He has undergone hormonal treatment so he is now beginning to develop secondary sex characteristics that make him look even more and more like a boy, including having a deepening voice and facial hair. So by any measure for Ash, we can demonstrate that he's a boy. The case is well into discovery at this point and although the declarations presented below certainly I think on their own establish that there is no real question here. There's no dispute that Ash is transgender and identifies as a boy. So can I just say, I take it you would not have a problem with a requirement on the part of a school district such as Kenosha to substantiate the fact that somebody is transgender whatever, transgender boy transgender girl. I'm thinking of the school district's argument that you don't want the captain of the football team suddenly announcing for three months that he's a girl so that he can go into the girls room and whatever he does. So you would agree that there could be some procedural set of requirements before somebody is accepted as one or the other. Yes, and we'd have to look at what those requirements were and whether they were onerous or overly invasive, but it's certainly reasonable for a school district to the extent that it has doubts about the veracity of a student's asserted gender identity to confirm that. There's various ways that school districts in practice have done that. Often they rely on the meeting with the student and their parents but certainly to the extent that there's other evidence to confirm a gender transition like Ash has presented here in the form of medical records, statements from others, statements from his own teachers probably, that there's no question here that he is well underway in his gender transition and has lived permanently and full-time as a boy for quite some time. What do you think your burden of proof is here? In other words, do you think self-identification is adequate? Do you think a doctor's note stating the would suffice? What is your burden? We propose that the test be that a transgender student who consistently asserts that gender identity should be treated as the sex with which they identify and that in practice different schools have again confirmed that in various ways. We wouldn't want to rely on any one measure such as a diagnosis of gender dysphoria which may be available to some students but not to others for reasons unrelated to their gender identity but there are reasonable, fairly non-invasive means that school districts around the country have used to confirm a student's gender identity so the real test should be whether it's consistently and persistently asserted at school. The real uphill battle that you face and I think the withdrawal of the Dear Colleague letter illustrates this fact, is really just what I want to call tradition. School districts like Kenosha take the position that they can discriminate as much as they want to against transgender people just as they could against people who are obese or just as they could against people who are annoying or any other trait that I can think of that doesn't happen to show up either in Title IX or in any of the other laws that are there. The Equal Protection Clause gives a tremendous amount of leeway if one doesn't at least get some kind of heightened scrutiny. We need to take into account what do these laws mean and how far can we go. That's why I think it's important because if sex and gender are somehow just so intermixed that a prohibition such as the one you find in Title IX against sex discrimination encompasses gender discrimination, that's one thing. But if they really are, as Mr. Statler argued, now something that we should put in completely different boxes, that might be a different thing. Well I think since Price-Waterhouse, Your Honor, the courts have although recognizing that sex and gender may carry different connotations, are both protected under the federal sex discrimination laws. And so as the District Court pointed out below and looking even at dictionary definitions of the word sex dating back to when Title IX was enacted, it has never conclusively limited the term sex to the gender on one's birth certificate or one's so-called biological sex, which we now know is not just a reference to external features because gender identity itself as presented in the expert declarations below is known to have biological components itself. Did the records provide any evidence about, sort of, the population as a whole? I think it did, didn't it? It said 0.7% of people below 18 are properly classified as transgender in 0.6. Maybe that was, I think, one of the amicus briefs. The scholars amicus brief from the Williams Institute talked about the percentage, the estimated percentage of transgender youth in the population as well as the estimated numbers within both Wisconsin and the region covered by the Seventh Circuit. But those surveys also acknowledge that they're likely underestimating the actual frequency of transgender students because of the significant discrimination that transgender people face in general and certainly that transgender students face. Although the population is small, it is a discrete minority that faces and has faced a long history of discrimination and is very clearly politically powerless. Heightened scrutiny on transgender status alone with or without regard to whether it's appropriate as a sex discrimination claim would be appropriate under the Equal Protection Clause. And do you think these policies are similar to the policies that were in place during Jim Crow? Huh? I'm sorry, Judge Williams. I said do you think these policies are similar to the bathroom policies that were in place during the Jim Crow era? Yes, I do. Others discomfort with individuals using restrooms has been a constant theme throughout both the Jim Crow era and in civil rights cases involving race and disability and sexual orientation. And courts have never recognized that others' discomfort with sharing a restroom with someone who is different from them in some way is cognizable where there is, as there is not here, any harm to those students or people other than simple discomfort. And here, Ash was using a stall, correct? That's correct. And what do you think has to happen to Elaine? Elaine, for the reasons that we've briefed, has largely been abrogated by the intervening case law in Price Waterhouse and on call. And the second reason that this court declines to give stare decisis to an existing precedent is for intervening factual developments and changes in circumstances that undermine the central premise of the case. So this court itself, as well as a number of other courts, have questioned the continuing vitality of Elaine's central premise that discrimination can only be against men for being men and women for being women. Post-Price Waterhouse, that framework just doesn't stand, as this court recognized as far back as Doe v. Belleville. But beyond that, the court's understanding of who transgender people are and what gender identity is was based on clearly outmoded and outdated and now known to be incorrect factual premises that we can now look to the weight of the scientific and medical evidence about who transgender people are, what gender identity is, that it is now no longer thought to be, it's been declassified in the DSM as a disorder, that the clinically relevant issue is not being permitted to live consistently with one's gender identity, not being transgender in the first instance, that transgender people, when they're allowed to live consistent with their sex, have the same life outcomes as anyone else. And so with the now weight of 30 or more additional years of scientific evidence, the central premise of U Lane, that this was a man pretending or trying to make it appear to be a woman or changing his sex or suffering from some sort of disorder, all of those have been eviscerated. So I see that my time is up, unless there are any further questions. I ask that the court affirm the injunction and decline to exercise pendant jurisdiction over the motion to dismiss. Alright, thank you. And Mr. Stadler, I told you I would give you some more time. I'll give you two minutes to rebut. Thank you, Chief Judge. I appreciate the courtesy. Let me leave you with a few points then, in the limited time that I have. One is I want to make sure that people understand that Price Waterhouse did not create some other protection by adding sex and gender to being protected under Title VII. What Price Waterhouse said is that sex stereotyping is discrimination because of sex in violation of Title VII. It used the word gender quite a bit, but I submit to the court that it did not use the word gender in terms of creating gender-based discrimination. Can I ask you whether Kenosha has any policy forbidding gay boys from using the boys' room and lesbian girls from using the girls' room? I am not aware that we have any such policy, and sexual orientation is actually protected under Wisconsin law. So you wouldn't be well advised to do that? Not well advised at all. Okay. The other point that I keep coming back to, and it's just an exercise in logic, and that is Title IX specifically allows us to segregate bathrooms, locker rooms, showers on the basis of sex. If what plaintiff complains of is on the basis of sex, we're allowed to do it by the federal regulations. I mean, I see that as this circular, logical path. But you couldn't force a girl to use the boys' room, even though that would be a sex-based decision. It doesn't say we can make sex-based... It says we can segregate on the basis of sex. But that still takes us back to our original question. What is Ash Whitaker's sex? We all agree you can assign him to the restroom that corresponds with his sex, but what is his sex? As a matter of law, Ash Whitaker's sex is defined on his birth certificate as female. That can be changed. It has not. And I don't believe that people have a unilateral right to simply declare my sex is different than what's on my birth certificate. Would you feel differently if there were medical evidence from the brain that actually showed some physical characteristic for a transgender boy that clearly showed that he was a boy and his brain looked different from the brains of the other people who had girl on their birth certificate? I don't know that there is such a thing. I don't know that that would create the distinction for me. I think Eulaine is the classic example. Don't forget... We're getting close to that if we're not there. Eulaine wasn't really just a transgender person in terms of someone of one sex saying, you know what, my sex is this. In Eulaine, plaintiff was born a man, went through hormone therapy, had the sex change surgery, got his birth certificate changed in terms of his name and his gender. That is very different. And I think Eulaine is still good law in terms of defining what sex is. Plaintiff in Eulaine would probably have a valid cause of action today under Price Waterhouse because it's sex stereotyping that really was the downfall in that case, but that didn't exist then. And that's how Price Waterhouse plays into it, but it doesn't eviscerate Eulaine. Thank you for your time. Thank you very much. Thanks to all counsel. We will take the case under advisement.